UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JOHNNY TARVER** | **CASE NO. 3:24-CV-00561** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **WALMART INC.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Pending before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. #9], filed by Plaintiff Johnny Tarver. The motion is opposed. [doc. #13].

For reasons set forth below, IT IS RECOMMENDED that the motion to remand [doc. #9] be DENIED and claims against Defendant Glenn Gilmore be DISMISSED WITHOUT PREJUDICE.

### Background

Johnny Tarver ("Plaintiff") filed a Petition against Walmart, Inc. ("Walmart") and Glenn Gilmore ("Gilmore"), (collectively "Defendants"), on March 22, 2024, in the Fourth Judicial District Court, Ouachita Parish, Louisiana. Petition for Damages [doc. #1-2, pp. 1-4]. Plaintiff seeks damages resulting from his termination of employment from Sam's Club in Monroe, Louisiana, on April 6, 2024. *Id.*

Plaintiff was employed by Walmart at their Sam's Club store located in Monroe, Louisiana. Petition for Damages [doc. #1-2, p. 1, ¶3]; Answer [doc. #11, p. 1, ¶3]. Allegedly, Plaintiff was injured while at Sam's Club on April 1, 2023. Petition for Damages [doc. #1-2, p. 1, ¶4]. After the injury, Plaintiff followed the policies and procedures applicable when an employee

1

is injured at Walmart. *Id.* at p. 1, ¶5. Plaintiff requested leave from work for Monday, April 3, 2023, to be assessed by a doctor. *Id.* at p. 2, ¶12. When Plaintiff returned to work on Thursday, April 6, 2023, he was terminated and was told it was due to attendance violations. *Id.* at p. 2, ¶14; Answer [doc. #11, p. 3, ¶14].

Defendants removed the action to this court on April 26, 2024. Notice of Removal [doc. #1]. Defendants' basis for removal is diversity jurisdiction. Notice of Removal [doc. #1, p. 1, ¶2]. Plaintiff is domiciled in Louisiana. *Id.* at p. 2, ¶1; Petition for Damages [doc. #1-2, p. 1]. Defendant Walmart is a Delaware corporation with its principal place of business in the state of Arkansas. Notice of Removal [doc. #1, p. 2, ¶2]. Defendant Gilmore is domiciled in Louisiana. *Id.* at p. 2, ¶3; Petition for Damages [doc. #1-2. p. 1, ¶1]. Defendants assert that Gilmore is not a properly joined defendant, and his domicile should not be considered for purposes of diversity jurisdiction. Notice of Removal [doc. #1, p. 2, ¶3]. Further, Defendants claim that the amount in controversy exceeds $75,000. *Id.* at pp. 4-5, ¶¶1-5.

Plaintiff contends that Defendants have failed to carry their burden of showing that the amount in controversy exceeds $75,000. M/Remand [doc. #9, p. 3, ¶10]. Additionally, Plaintiff argues that Gilmore is a properly joined Defendant. Memo in Support of M/Remand [doc. #9-1, pp. 3-5].

Plaintiff filed the instant motion to remand on May 15, 2024. M/Remand [doc. #9]. Walmart and Gilmore filed their opposition to the motion on June 5, 2024. Opposition to M/Remand [doc. #13].

Plaintiff did not file a reply. Accordingly, the matter is ripe.

## Analysis

### I. Legal Standard

A defendant may remove an action from state to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id.* at 723. Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Accordingly, the removal statute is to be construed "strictly against removal and for remand." *Hicks v. Martinrea Automotive Structures (USA), Inc.*, 12 F.4th 511, 515 (5th Cir. 2021).

One path to secure federal jurisdiction on removal is through diversity, which requires (a) complete diversity of citizenship between plaintiffs and defendants, and (b) an amount in controversy greater than $75,000. 28 U.S.C. § 1332(a).

### II. Discussion

According to Defendants, this Court has diversity jurisdiction over the instant action. Notice of Removal [doc. #1, p. 1, ¶2]. While Defendants admit that Gilmore is domiciled in Louisiana, Defendants argue that he has not been properly joined, thus, his domicile should not be considered for diversity jurisdiction purposes. *Id.* at p. 2, ¶3. Plaintiff counters that Gilmore was properly joined. Memo in Support of M/Remand [doc. #9-1, pp. 4-5]. Additionally, Defendants purport that the amount in controversy does exceed $75,000. Notice of Removal [doc. #1, pp. 4-5, ¶¶1-5]. Plaintiff contends that Defendants have failed to carry their burden of showing that the amount in controversy exceeds $75,000. M/Remand [doc. #9, p. 3, ¶10]. The propriety of remand

thus turns on if Gilmore is a properly joined defendant and if the amount in controversy is met. Accordingly, the undersigned determines whether Gilmore has been properly joined before analyzing if the amount in controversy is met.

    a. *Improper Joinder of Gilmore*

It has been long established that an improperly joined or nominal defendant will not defeat subject matter or removal jurisdiction. *See Farias v. Bexar Cnty. Bd. of Trustees for Mental Health Mental Retardation Servs*, 925 F.2d 866, 871 (5th Cir. 1991); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Labs*, 408 F.3d 177, 183 (5th Cir. 2005)). A defendant that would defeat diversity is improperly joined if "a plaintiff is unable 'to establish a cause of action against the non-diverse party in state court.'" *Hicks*, 12 F.4th at 515 (citing *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004)). "[Improper] joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). There are no allegations of actual fraud in the instant case, so the undersigned limits analysis to the second test. When considering a plaintiff's ability to establish a cause of action against non-diverse parties, the Court must determine "whether there is arguably a reasonable basis for predicting that state law might impose liability." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003). "This means there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "Nonetheless, the burden of persuasion on those claiming [improper] joinder remains a heavy one." *Id.*

There are two ways to predict the imposition of liability: (1) the court can look at the allegations of the complaint to determine whether a claim is stated against the diversity-destroying defendants

4

under state law; or (2) in the few cases where the plaintiffs have stated a claim but have misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, "pierce the pleadings" and conduct a summary inquiry. *Smallwood*, 385 F.3d at 573. The first test ("the Claim Inquiry") has been likened to the analysis used in Rule 12(b)(6) challenges. *Id.* ("Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."); *see also* Fed. R. Civ. P. 12(b)(6). To survive the Claim Inquiry, a complaint "must [contain] 'enough facts to state a claim to relief that is plausible on its face.'" *Hicks*, 12 F.4th at 515 (citing *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016)). The second test ("the summary inquiry") is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. If the plaintiff (a) cannot state a claim against the non-diverse defendant, or (b) successfully states a claim but fails to rebut evidence sufficient to preclude recovery, then improper joinder has occurred, and the district court properly has jurisdiction over the case. In such a case, it is appropriate to dismiss without prejudice all claims against any improperly joined defendants. *Int'l Energy Ventures*, 818 F.3d at 210. The United States Court of Appeals for the Fifth Circuit has recognized that the decision for which test to apply lies within the discretion of the trial court, but the summary inquiry is only appropriate in a small number of cases. *See Smallwood*, 385 F.3d at 573-74. Thus, the undersigned proceeds with the Claim Inquiry.

As the Claim Inquiry is being utilized, the undersigned now analyzes whether the controlling pleadings state a plausible claim against Gilmore. *See City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) (To survive a Rule 12(b)(6) motion, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid

5

claim."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[1] In Plaintiff's Motion to Remand, Plaintiff asserts that three causes of actions have been alleged against Gilmore in the petition: (1) intentional tort; (2) religious discrimination; and (3) wrongful, retaliatory discharge. Memo in Support of M/Remand [doc. #9-1, p. 1]. The Court will assess the merit of each claim in turn.

    *(1) Retaliatory Discharge Claim*

Under Louisiana law, employers may not discharge employees from employment for asserting a workers' compensation claim. La. R.S. § 23:1361. To recover, an employee must "establish by a preponderance of the evidence that she was discharged because she asserted a workers' compensation claim." *Moreau v. Caddo Par. Dist. Att'y Off.*, 2020 WL 1494142, at *7 (W.D. La. Mar. 26, 2020) (citing *Kendrick v. Hercules Concrete Pumping Serv. Of Miss., Inc.*, 51,190 (La. App. 2 Cir. 2/17/17), 216 So. 3d 261, 265 (citations omitted)). A cause of action under Louisiana Revised Statute § 23:1316 can be brought solely against the employer by an employee. *See Bynog v. Aecom Gov't Servs. Inc.*, 2008 WL 205444, at *2 (W.D. La. Jan. 23, 2008); *see also Robin v. Galan*, 545 So. 2d 1129, 1132 (La. Ct. App. 1989).

Considering the pleadings, Plaintiff asserts that he was "discharged retaliatorily by his employer Walmart, Inc." Petition for Damages [doc. #1-2, p. 1, ¶5]. The petition, however, fails to state any facts connecting Gilmore to the claim for retaliatory discharge. Instead, the claims against Gilmore include that he "acted hostile" towards the Plaintiff and that Gilmore failed to "remove the point from Mr. Tarver's employee file." *Id.* at pp. 1-2. ¶¶6, 9. These facts fail to

---

[1] The federal pleading standard, not a state pleading standard, applies when conducting a Rule 12(b)(6)-type analysis to determine whether plaintiff has failed to state a claim against a nondiverse defendant under state law. *See Int'l Energy Ventures*, 818 F.3d at 200.

support that Plaintiff was retaliatorily discharged by Gilmore due to his workers' compensation claim against Walmart. Moreover, Louisiana Revised Statute § 23:1361 provides a remedy against an employer, not a fellow employee. Gilmore "was an employee with Walmart, Inc. that had been delegated to the responsibility of keeping track of the employee's point system." *Id.* at p. 2, ¶7. Given that Walmart is the Plaintiff's employer, the claim under Louisiana law can only be brought against Walmart, not Gilmore. *See id.* at p. 1, ¶3. Accordingly, Plaintiff has failed to state a claim against Gilmore for retaliatory discharge under Louisiana Revised Statute § 23:1361.

*(2) Religious Discrimination Claim*

Regarding the claim of religious discrimination, Louisiana Revised Statute 23:332 governs intentional discrimination in employment and states in pertinent part: "A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices: (1) Intentionally . . . discriminate against any individual with respect to . . . religion."

Upon review of the Plaintiff's Petition, there is a singular claim involving Gilmore and religious discrimination, which reads: "Glenn Gilmore . . . acted hostile to Johnny Tarver due to him being a practicing Christian." Petition for Damages [doc. #1-2, p. 1. ¶6]. The Plaintiff, however, fails to allege any specific facts that demonstrate how Gilmore discriminated against the Plaintiff. Rather than providing factual support, the claim is conclusory in nature. The United States Supreme Court has made clear that "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton*, 632 F.3d at 152-53. Without the necessary factual support, the religious discrimination assertion cannot form the basis of a viable claim.

7

Moreover, "employer" is defined under Louisiana Revised Statute § 23:302(2) as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee." In the petition, Gilmore is described as "an employee with Walmart, Inc. that had been delegated to the responsibility of keeping track of the employee's point system." [doc. #1-2, p. 2, ¶7]. The petition does not indicate that Gilmore provided compensation to any employee; instead, it identifies him as an employee of Walmart. A religious discrimination claim can only be brought against an "employer" as defined by the statute. Since Gilmore does not meet the statutory definition of the Plaintiff's employer, this claim cannot be maintained against him. Accordingly, the Plaintiff has failed to state a claim against Gilmore for religious discrimination.

*(3) Intentional Tort Claim*

In Louisiana, a person is liable for "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code Ann. art. 2315. A tort is deemed intentional when the actor either "entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow." *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981). Plaintiff asserts that Gilmore "intentionally failed to take points off his employee record and intentionally gave him points he didn't deserve, knowing Plaintiff would be terminated for having too many points." Memo in Support of M/Remand [doc. #9-1, p. 4]. However, Plaintiff has failed to identify the intentional tort allegedly committed. The defense, as well as this Court, finds that the only conceivable intentional torts Plaintiff could be alleging against Gilmore are intentional interference with contract, intentional infliction of emotional distress, and the intentional tort of wrongful discharge.

To establish a claim for intentional interference with contract against a corporate officer, the following elements must be met: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; and (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer. *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 234 (La. 1989). The petition identifies Gilmore as "an employee with Walmart, Inc." [doc. #1-2, p. 2, ¶7]. As a supervisor and employee of Walmart, Gilmore does not qualify as a corporate officer.

Moreover, in Louisiana, the Plaintiff would be considered an at-will employee. "'Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge.'" *Stewart v. Courtyard Mgmt. Corp.*, 155 F. App'x. 756, 758 (5th Cir. 2005) (quoting *Robinson v. Healthworks Int'l, L.L.C.*, 36,802 (La. App. 2 Cir. 1/29/03), 837 So. 2d 714, 721). Plaintiff has not asserted that he was employed under a contract. Without a contract, there can be no claim for intentional interference with contract under Louisiana law. Furthermore, as an at-will employee, Plaintiff could be dismissed at any time for any reason or for no reason, and Plaintiff has not cited any statutory or jurisprudential authority to suggest otherwise. In Louisiana, in the absence of constitutional or statutory protection, an at-will employee has no cause of action for wrongful termination. *See Stewart*, 155 Fed. App'x. at 758-59. Consequently, Plaintiff has failed to state a claim against Gilmore for intentional interference with contract and intentional wrongful discharge.

As to the claim for intentional infliction of emotional distress, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The Supreme Court of Louisiana emphasized that the conduct must be "*so* outrageous in character, and so extreme in danger, as to go beyond all possible bounds of human decency." *Id.* (emphasis added). This Court finds that the failure to remove a point from an employee's file does not constitute behavior that surpasses all bounds of decency. Additionally, Plaintiff has failed to allege any supporting facts that he has suffered *severe* emotional distress as a result of his termination. Accordingly, Plaintiff has failed to state a claim against Gilmore for intentional infliction of emotional distress. Thus, Plaintiff has failed to state a claim against Gilmore for any intentional tort.

In summation, based on the aforementioned reasons, this Courts finds that Plaintiff has failed to establish that Gilmore committed an intentional tort, religiously discriminated against him, or that Gilmore retaliatory discharged him. Plaintiff is thus unable to state a claim against Gilmore.

 b. *Amount in Controversy*

Defendants assert that the amount in controversy in this case exceeds $75,000. Notice of Removal [doc. #1, p. 2]. Plaintiff contends that Defendants have failed to carry their burden of showing that the amount in controversy exceeds $75,000. M/Remand [doc. #9, p. 3, ¶10]. Pursuant to the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA"), the removal statute now specifies that

> [i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks—
> (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded.

28 U.S.C. §1446(c)(2)(A)(ii).

In Louisiana state court cases, plaintiffs are prohibited from alleging a monetary amount of damages in the petition. LA. CODE CIV. PROC. ANN. art. 893. Thus, the removing defendant must assert the amount in controversy in the notice of removal, which "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). Here, Plaintiff challenged the amount in controversy allegation made by Defendants. M/Remand [doc. #9, p. 3, ¶10]. In *Dart Cherokee*, the Supreme Court explained that "[i]n such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." 574 U.S. at 88. Plaintiff did not submit any proof regarding the amount in controversy. Nonetheless, because "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court," the burden rests with the removing defendant to establish the requisite amount in controversy. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted); *see also Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999) (even a plaintiff's failure to object to jurisdiction and her attorney's personal belief that the case was worth much more than $75,000 does not relieve defendant of its burden to support federal jurisdiction at the time of removal).

11

To satisfy the preponderance standard, the removing defendant may support federal jurisdiction "in either of two ways: (1) by demonstrating that it is facially apparent from the petition that the claim likely exceeds $75,000 or (2) by setting forth *the facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount." *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 868 (5th Cir. 2002) (citations and internal quotation marks omitted). In the aftermath of *Dart Cherokee*, it is not entirely clear whether a removing defendant may rely on the "facially apparent" method of proof to establish the amount in controversy when contested by the plaintiff. *See Statin v. Deutsche Bank Nat. Tr. Co.*, 599 Fed. App'x. 545, 546 n. 1 (5th Cir. 2014).

However, to the extent that the "facially apparent" method of proof survives *Dart Cherokee*, the Court is convinced that it is satisfied in this case and that the amount in controversy requirement is met. In Plaintiff's Petition, he alleged that he was wrongfully terminated from his employment at Sam's Club on the basis of retaliation for the claims he filed against Walmart for the injury he sustained on April 1, 2023. Petition for Damages [doc. #1-2, p. 1, ¶¶4-5]. Plaintiff also asserts that he was discriminated against due to his religious beliefs. *Id.* at p.1, ¶6. As a result of his termination, Plaintiff incurred the following categories of damages:

1. Lost income (past, present, & future);
2. Inconvenience (past, present, & future);
3. Mental anguish and worry;
4. Other damages as they continue to accrue through trial and will be supplemented in due course.

*Id.* at p. 3, ¶19.

Defendants cite Louisiana Revised Statute § 23:1361(C) in determining the amount in controversy for this matter. Notice of Removal [doc. #1, pp. 3-4, ¶4]. The statute provides in pertinent part:

> C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with reasonable attorney's fees and court costs.

La. R.S. § 23:1361(C).

The statute provides for a civil penalty equivalent to the amount the employee would have earned based on the earnings of the employee at the time of discharge. *Id.* The civil penalty cannot exceed more than one year's earnings. *Id.* Defendants have stated that Plaintiff's annualized earnings, without overtime and benefits, was approximately $32,000. Memo in Opposition to M/Remand [doc. #13, p. 22]; Notice of Removal [doc. #1, p. 5, ¶4]. Defendants have also provided statements of earnings and deductions to support this assertion. Memo in Opposition to M/Remand [doc. #13-3, pp. 1-4]. The statute also provides for the recovery of reasonable attorney's fees and court costs. La. R.S. § 23:1361(C). Defendants have asserted that courts have awarded attorney's fees ranging from $36,000 and $68,000 per plaintiff in retaliatory and discrimination cases. Memo in Opposition to M/Remand [doc. #13, p. 23]. Upon review, the Court finds this range to be reasonable and consistent with prevailing awards in similar cases. *See Brown v. Catalyst Recovery of Louisiana*, 01-1370 (La. App. 3 Cir. 4/3/02), 813 So. 2d 1156, 1170 (awarding $35,402.10 and $124,602.41 in attorney fees in a wrongful termination suit where the

13

plaintiff is alleging wrongful termination in retaliation for reporting OSHA violations). In fact, some cases have awarded amounts exceeding the range suggested by defendants. *See Sonnier v. Diversified Healthcare-Lake Charles, LLC*, 2022-420 (La. App. 3 Cir. 4/26/23), 364 So. 3d 1213, 1239 (awarding $104,177.50 in attorney fees where plaintiff was terminated in retaliation for whistleblowing); *Motton v. Lockheed Martin Corp.*, 2003-0962 (La. App. 4 Cir. 3/2/05), 900 So. 2d 901, 908 (awarding $115,198.75 in attorney fees for plaintiff who succeeded in her sexual discrimination claim against her employer).

Additionally, Plaintiff seeks damages for the mental anguish he suffered as a result of his termination. Petition for Damages [doc. #1-2, p. 3, ¶19]. The Court finds that juries in Louisiana commonly award mental anguish awards in the range of $20,000 to $30,000 in job retaliation and discrimination cases. *See Goldsby v. State, Dep't of Corr.*, 2003-0343 (La. App. 1 Cir. 11/7/03), 861 So. 2d 236, 238 (awarding mental anguish damages of $20,000 for retaliatory action taken against plaintiff for his whistleblowing activities); *Smith v. Ouachita Par. Sch. Bd.*, 29,873 (La. App. 2 Cir. 9/24/97), 702 So. 2d 727, 730 (awarding mental anguish damages of $25,000 in a case where plaintiff was a tenured teacher of business courses and a high school guidance counselor and was then demoted to other non-teaching positions); *Brown*, 813 So. 2d at 1163 (awarding mental anguish damages of $30,000 in a wrongful termination suit where plaintiff is alleging wrongful termination in retaliation for reporting OSHA violations); *Overton v. Shell Oil Co.*, 2005-1001 (La. App. 4 Cir. 7/19/06), 937 So. 2d 404, 410 (awarding mental anguish damages of $25,000 in an action where employee claims his termination was retaliation based on his status as a whistleblower); *Oden v. Baroid Drilling Fluids, Inc.*, 95-0827 (La. App. 4 Cir. 12/14/95), 665 So. 2d 1300, 1303 (awarding $20,000 in mental anguish damages where

plaintiff claims he was terminated from his job due to racial discrimination). Some Louisiana courts have even awarded beyond the typical range mentioned before. *See Sonnier,* 364 So. 3d at 1241 (awarding $214,000 in mental anguish damages where plaintiff was terminated in retaliation for whistleblowing); *Kling v. Louisiana Dep't of Revenue*, 2018-1480 (La. App. 1 Cir. 7/18/19), 281 So. 3d 696, 702 (awarding $75,000 in mental anguish damages where plaintiff was terminated as a result of free speech retaliation).

In summation, the Court concludes that the value of the relief sought by Plaintiff exceeds the jurisdictional threshold for the exercise of diversity jurisdiction. The undersigned finds that Defendants have established by a preponderance of evidence that the amount in controversy exceeded $75,000 at the time of removal. Further, the undersigned finds that Gilmore was improperly joined, and his domicile should not be considered for diversity jurisdiction purposes. Therefore, the court enjoys subject matter jurisdiction, via diversity. 28 U.S.C. § 1332.

Accordingly, it is RECOMMENDED that the motion to remand be denied and all claims against Gilmore be dismissed without prejudice.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the Plaintiff Johnny Tarver's motion to remand [doc. #9] be **DENIED** and all claims against Defendant Glenn Gilmore be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 18th day of September, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE